UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 21-CR-00034LEK |
|  | ) |  |
| Plaintiff, | ) | October 17, 2022 |
|  | ) | 10:56 a.m. |
| vs. | ) |  |
|  | ) |  |
| WAYNE INOUYE, | ) |  |
|  | ) | U.S. District Court |
| Defendant. | ) | 300 Ala Moana Boulevard |
|  | ) | Honolulu, HI 96850 |
| _____ | ) |  |

TRANSCRIPT OF CHANGE OF PLEA HEARING
BEFORE THE HONORABLE ROM TRADER
UNITED STATES MAGISTRATE JUDGE

<u>APPEARANCES:</u>

For Plaintiff:                          Craig S. Nolan, Esq.
                                        Michael D. Nammar, Esq.
                                        U.S. Attorney's Office
                                        300 Ala Moana Boulevard, Suite
                                        6100
                                        Honolulu, HI 96850

For Defendant:
                                        Thomas M. Otake, Esq.
                                        851 Fort Street Mall, Suite 400
                                        Honolulu, HI 96813

Transcription Service:
                                        Jessica B. Cahill, CER/CET-708
                                        Maukele Transcribers, LLC
                                        467 Maukele Place
                                        Wailuku, Maui, HI  96793
                                        Telephone: (808)244-0776

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

```
 1   OCTOBER 17, 2022                              10:56 A.M.

 2             THE CLERK:  All right, Your Honor.  Next matter,

 3   criminal number 21-00034LEK, United States of America v.

 4   Defendant (01) Wayne Inouye.  This case has been called for a

 5   change of plea hearing.

 6             Counsel, your appearances, please, starting with the

 7   Government.

 8             MR. NOLAN:  Good morning, Your Honor.  Craig Nolan and

 9   Michael Nammar for the Government.

10             THE COURT:  All right.  Good morning, gentlemen.

11             MR. OTAKE:  Good morning, Your Honor.  Thomas Otake, on

12   behalf of Wayne Inouye, who is present.

13             THE COURT:  All right.  Very good.  And good morning to

14   you, Mr. Otake and Mr. Inouye.  All right.  Please be seated,

15   folks.

16             MR. OTAKE:  Can I clarify one quick thing, Your Honor?

17             THE COURT:  Yeah.

18             MR. OTAKE:  I know there may have been some confusion

19   in some of the emails back and forth, but just to be clear, Mr.

20   Inouye is not pleading to a plea agreement today --

21             THE COURT:  Correct.

22             MR. OTAKE:  -- but he's just pleading guilty to the

23   indictment.

24             THE COURT:  Understood.

25             MR. OTAKE:  Okay.  Thank you.
```

1           THE COURT:  Understood.  Okay.  You can be seated.  And
2  if you could adjust the microphone there, Mr. Inouye.  We're
3  going to take some time to go through some things.
4           MR. OTAKE:  Is it -- he can remain seated through the
5  questioning?
6           THE COURT:  That's fine.  Yeah.
7           MR. OTAKE:  Thank you.
8           THE COURT:  And at the outset, I'm going to have you
9  sworn, so if you would just raise your right hand, please.
10      WAYNE INOUYE, DEFENDANT, SWORN
11          THE COURT:  Okay.  Good morning.  Can you state your
12  name for the record?
13          THE DEFENDANT:  Wayne Inouye.
14          THE COURT:  Okay.  You understand why you're here
15  today, right, Mr. Inouye?
16          THE DEFENDANT:  Yes.
17          THE COURT:  Okay.  So you're here, as I understand it,
18  to enter guilty pleas as charged to the seven counts in the
19  indictment; is that correct?
20          THE DEFENDANT:  Yes.
21          THE COURT:  Okay.  And intend to do so today without
22  the benefit of a plea agreement, right?
23          THE DEFENDANT:  Yes.
24          THE COURT:  And you intend to enter that plea before
25  this Court?  I'm a magistrate judge, not a district judge, and

1  we'll talk about that in a little bit.  But that's your

2  intention, right?

3          THE DEFENDANT:  Yes.

4          THE COURT:  All right.  So in order for us to proceed

5  -- we can do all that, okay, but it's important that we make a

6  record.  And Mr. Otake, I'm sure, consistent with how he

7  practices, has gone through everything at length with you, has

8  advised you, and you're fully prepared to proceed today.

9          And so by asking you a bunch of these questions, I'm

10  not implying at all that Mr. Otake hasn't done his job or you

11  don't understand what's going on.  It's just important that we

12  make sure that the record is clear.  These are big decisions that

13  you're making, and we want to make sure that the record is clear,

14  that you understand what's going on, the possible consequences,

15  and this is what you've decided to do.  You understand all that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  If you have any questions at all --

18  sometimes I don't ask the question in a proper form, okay, or I

19  use a term you may not be familiar with.  At any point in time,

20  feel free, just stop me.  Let me know, hey, Judge, I don't

21  understand what you're asking me, or I'd like a minute to talk to

22  Mr. Otake.  Just feel comfortable, feel free to just let me know

23  that, and I'll give you an opportunity to, one, speak to Mr.

24  Otake, or I'll try to do my best to clarify the question.  Okay,

25  fair enough?

```
 1                THE DEFENDANT:  Yes.

 2                THE COURT:  Otherwise, I'm going to presume that you're

 3   crystal clear about what's being asked of you, okay?

 4                THE DEFENDANT:  Yes.

 5                THE COURT:  All right.  Now -- okay.  How old are you

 6   today, Mr. Inouye?

 7                THE DEFENDANT:  Sixty-five.

 8                THE COURT:  Okay.  How far did you get in school?

 9                THE DEFENDANT:  College graduate.

10                THE COURT:  Okay.  And what's your degree in?

11                THE DEFENDANT:  Psychology.

12                THE COURT:  Psychology, okay.  You read, write, and

13   understand English just fine, right?

14                THE DEFENDANT:  Yes.

15                THE COURT:  All right.  You had an opportunity to

16   review, I guess, the charges or indictment in this case, right?

17                THE DEFENDANT:  Yes.

18                THE COURT:  You read that to yourself, correct?

19                THE DEFENDANT:  Yes.

20                THE COURT:  And you reviewed everything with your

21   attorney, right?

22                THE DEFENDANT:  Yes.

23                THE COURT:  Okay.  Now as far as you know here today,

24   you're clear about what those charges are.  You don't have any

25   questions about them, in other words; is that right?
```

```
 1                THE DEFENDANT:  Yes.

 2                THE COURT:  Okay.  Now how are you feeling today?

 3                THE DEFENDANT:  Fine.

 4                THE COURT:  Okay.  Are you thinking clearly?

 5                THE DEFENDANT:  Yes.

 6                THE COURT:  Physically, you feel rested enough?  You're

 7   ready to spend some time talking about a few things here today?

 8                THE DEFENDANT:  Yes.

 9                THE COURT:  Okay.  Any medication, drugs, or alcohol in

10   the last two days?

11                THE DEFENDANT:  Just my regular prescription.

12                THE COURT:  Okay.

13                THE DEFENDANT:  Yeah.

14                THE COURT:  And the prescription medication that you

15   take, what is that for?

16                THE DEFENDANT:  Blood pressure, cholesterol, and

17   glaucoma.

18                THE COURT:  Okay.  Now you take those as prescribed; is

19   that correct?

20                THE DEFENDANT:  Yes.

21                THE COURT:  Is that every day?

22                THE DEFENDANT:  Yes.

23                THE COURT:  Okay.  And what time of day do you usually

24   take those medications?

25                THE DEFENDANT:  Usually in the evening.
```

 1              THE COURT:  Okay.  And is there anything about when you

 2    take those medications regularly that affects the way you think

 3    or feel at all?

 4              THE DEFENDANT:  No.

 5              THE COURT:  Okay.  In other words, there's nothing

 6    about you having taken those as prescribed that makes you feel

 7    unwell today, or foggy, or less than clear headed this morning;

 8    is that right?

 9              THE DEFENDANT:  Correct.

10              THE COURT:  Okay.  Now you feel comfortable, and you

11    understand the purpose of today's proceeding?

12              THE DEFENDANT:  Yes.

13              THE COURT:  And you've made a big decision to plead

14    without the benefit of any plea agreement, right?

15              THE DEFENDANT:  Yes.

16              THE COURT:  Do you think you've had enough time to talk

17    to Mr. Otake about that?

18              THE DEFENDANT:  Yes.

19              THE COURT:  And talk to your family and decide for

20    yourself what it is you want to do?

21              THE DEFENDANT:  Yes.

22              THE COURT:  Okay.  You comfortable with that decision?

23              THE DEFENDANT:  Yes.

24              THE COURT:  You satisfied with the advice and services

25    provided to you by Mr. Otake in this matter?

1          THE DEFENDANT:  Yes.

2          THE COURT:  In other words, no complaints at all,

3   right?

4          THE DEFENDANT:  No.

5          THE COURT:  Okay.  I'm not saying there would be.  I'm

6   just asking.  Okay.  All right.  Anyone make you any promises to

7   get you to plead here today?

8          THE DEFENDANT:  No.

9          THE COURT:  Anyone trying to put any pressure on you to

10  plead when you don't want to?

11         THE DEFENDANT:  No.

12         THE COURT:  And whose choice is it to plead in this

13  case before this Court today?

14         THE DEFENDANT:  Mine.

15         THE COURT:  All right.  Now, is there anything at all

16  -- do you have any hesitation at all about proceeding forward

17  this morning, Mr. Inouye?

18         THE DEFENDANT:  No.

19         THE COURT:  Okay.  Now, Mr. Otake, can you confirm that

20  it's your belief that your client is competent to proceed today

21  and enter a plea?

22         MR. OTAKE:  Yes, Your Honor.

23         THE COURT:  All right.  Very good.  Now, Mr. Inouye,

24  you have a right to plead before the district judge, and that is

25  Judge Kobayashi in this case.  Do you understand?

1              THE DEFENDANT:  Yes.

2              THE COURT:  She's a district judge, okay.  All right.

3    I'm a magistrate judge, okay.  And so you can consent to plead

4    before me, but you need to understand that by doing that, you're

5    giving up your right to enter a plea before the district judge.

6    Do you understand?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Are you willing to give up that right to

9    plead before Judge Kobayashi, and instead enter a plea here today

10   before this Court?

11             THE DEFENDANT:  Yes.

12             THE COURT:  I've received what appears to be a signed

13   two page document entitled consent to Rule 11 plea in a felony

14   case before a United States Magistrate Judge.  It appears to bear

15   your signature, that of Mr. Otake, and the electronic signature

16   of the Government's attorney, Mr. Nolan.  Are you familiar with

17   that form?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Okay.  And this is your signature on this

20   form, sir, I'm showing you page two?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Okay.  Not to say that your -- if your eyes

23   are that good, you can see it from there.  But you understand

24   which form I'm holding up, right?

25             THE DEFENDANT:  Yes.

1          THE COURT:  All right.  Before you signed this, you

2    discussed it in full with your attorney?

3          THE DEFENDANT:  Yes.

4          THE COURT:  You read it to yourself very carefully?

5          THE DEFENDANT:  Yes.

6          THE COURT:  And at the time you signed it, you fully

7    understood everything in this document; is that correct?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you have any questions about anything

10   that's in this document today?

11          THE DEFENDANT:  No.

12          THE COURT:  All right.  All right.  And this is what

13   you want to do?

14          THE DEFENDANT:  Yes.

15          THE COURT:  All right.  With that, the Court will find

16   that Mr. Inouye has voluntarily, knowingly, and intelligently

17   consented to plead before this Court.  And we'll have this

18   consent form filed and made a part of the record in this case.

19   All right.  Mr. Inouye, we've got charges launched against you in

20   this case, I believe it was by indictment, seven accounts,

21   correct?

22          THE DEFENDANT:  Yes.

23          THE COURT:  All right.  Now Counts 1 through 6 are

24   conspiracy to commit honest services, wire fraud.  Count 7 is

25   essentially making false statements.  Yes?

1           THE DEFENDANT:  Yes.

2           THE COURT:  Okay.  As you sit here today, are you

3    comfortable, and you fully and completely understand each and

4    every one of the charges that you intend to plead to today?

5           THE DEFENDANT:  Yes.

6           THE COURT:  Okay.  And as part of your process, you

7    went through and Mr. Otake explained to you basically the

8    evidence the Government has against you, correct?

9           THE DEFENDANT:  Yes.

10           THE COURT:  And he's explained to you what facts or

11    elements they're going to have to prove if the case were to go to

12    trial, right?

13           THE DEFENDANT:  Yes.

14           THE COURT:  Okay.  And he also shared with you what

15    possible defenses you might raise if you chose to go to trial,

16    correct, sir?

17           THE DEFENDANT:  Yes.

18           THE COURT:  All right.  And he also told you about what

19    penalties might apply in your case, right?

20           THE DEFENDANT:  Yes.

21           THE COURT:  And that's as to each and every one of

22    these counts, right?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Okay.  After having that discussion with

25    Mr. Otake, do you feel you comfortably -- you understand each and

1  every one of the charges in this case?

2            THE DEFENDANT:  Yes.

3            THE COURT:  And he's explained to you fully the

4  consequences of you pleading without any assurances or any plea

5  agreement from the Government; is that correct?

6            THE DEFENDANT:  Yes.

7            THE COURT:  All right.  And are you comfortable with

8  that decision to move forward and plead without a plea agreement?

9            THE DEFENDANT:  Yes.

10           THE COURT:  I'm not saying it whether you like it or

11 not.  I'm saying you've thought about it, you understand what

12 your options are.  Based on that and advice of counsel, this is

13 what you think you need to do?

14           THE DEFENDANT:  Yes.

15           THE COURT:  Okay.  Any hesitation at all about that?

16           THE DEFENDANT:  No.

17           THE COURT:  All right.  Mr. Otake, I take you to agree

18 with Mr. Inouye's decision to plead?

19           MR. OTAKE:  Yes, Your Honor.

20           THE COURT:  All right.  Now with that, what we're going

21 to do is we're going to break this down.  We're first going to

22 cover what the maximum penalties are.  And in different points

23 during today's proceeding, I'm going to ask the Government to

24 recite certain information.  This information is going to be

25 information that you're familiar with, okay?  But because we're

1    making a record, I want you to listen, okay, and make sure you

2    understand it.  If you have any questions about any of it, please

3    feel free to let me know.

4              Okay.  With that, I'm going to ask the Government,

5    please, to summarize the maximum penalties that apply in this

6    case.

7              MR. NOLAN:  Yes, Your Honor.  As to each of Counts 1

8    through 6 on a services wire fraud, a term of imprisonment of up

9    to 20 years and a fine of up to $250,000, plus a term of

10   supervised release up to three years.  As to Count 7, false

11   statement, a term of imprisonment of up to five years, and a fine

12   of up to $250,000, plus a term of supervised release up to three

13   years.  In addition, the Court must impose a $100 special

14   assessment as to each count to which the Defendant is pleading

15   guilty.

16             Additionally, pursuant to 18 U.S.C., Section

17   981(a)(1)(C) and 28 U.S.C. 2461, the Court shall award forfeiture

18   of any property, real or personal, which constitutes or is

19   derived from proceeds traceable to a violation of a specified

20   unlawful activity within the meaning of 18 U.S.C. 1956(c)(7).

21   Each of counts 1 through 6, are an SUA specified unlawful

22   activity. The Government calculates the amount subject to

23   forfeiture as not less than $104,140.81.

24             In addition, the Court must also award restitution

25   pursuant to Title 18, United States Code, Section 3663(a), to the

1    persons and entities victimized by the Defendant's offenses.

2              THE COURT:  All right.  Mr. Otake, do you agree with

3    those being the maximum possible penalties?

4              MR. OTAKE:  Yes.

5              THE COURT:  All right.  Mr. Inouye, you heard all that?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Okay.  You're familiar with that, right?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Okay.  So you understand that for each one

10   of the counts, as Mr. Nolan described, these are the maximum

11   penalties that you face in terms of prison time, a period of

12   supervised release, fines, special assessments, as well as

13   restitution and forfeiture as described.  Do you understand that?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Do you have any questions about any of

16   that?

17             THE DEFENDANT:  No.

18             THE COURT:  Okay.  All right.  And you understand that

19   as far as the matter of restitution, while that applies in this

20   case, as of right now, as we sit here today, it's unknown whether

21   or to what extent restitution -- in other words, what that number

22   might be.  Do you understand?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Okay.  But it will be up to the Court to

25   decide that after receiving appropriate submissions, information

1   and applying various legal standards before that can be known.

2   So all you need to be clear about is that that is a possibility,

3   and you're prepared to accept that; is that right?

4            THE DEFENDANT:  Yes.

5            THE COURT:  Okay.  Now I think you're a U.S. citizen,

6   correct, Mr. Inouye?

7            THE DEFENDANT:  Yes.

8            THE COURT:  All right.  If you happen not to be a

9   United States citizen, this might be overkill in some people's

10  estimation, but old habits die hard for me.  But if it is that

11  you're not a U.S. citizen, you need to understand there are

12  possible adverse consequences if you entered a plea and were

13  sentenced in this case.  Do you understand that?

14           THE DEFENDANT:  Yes.

15           THE COURT:  Okay.  That can include your immediate

16  detention, deportation, exclusion from admission to the United

17  States, and the denial of any request from a naturalized US.

18  Citizen.  Do you understand that?

19           THE DEFENDANT:  Yes.

20           THE COURT:  Okay.  Now, you also understand that you're

21  going to lose some important civil rights by entering a plea

22  today?  Do you understand that?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Okay.  And that includes the right to vote,

25  the right to hold public office, the right to serve on a jury,

1   and the right to possess any sort of firearm or ammunition.  Do

2   you understand that?

3          THE DEFENDANT:  Yeah.

4          THE COURT:  All right.  Do you have any questions about

5   those possible maximum penalties, as well as forfeiture

6   restitution, adverse impact on immigration status and loss of

7   your civil rights?  Any questions about that?

8          THE DEFENDANT:  No.

9          THE COURT:  All right.  Now, with regard to elements of

10  the offense, Mr. Nolan, if you could please recite the elements

11  that the Government's required prove?

12         MR. NOLAN:  Yes, Your Honor.  As to Counts 1 to 6,

13  honest services wire fraud in violation of 18 U.S.C., Sections

14  1343 and 1346, the following are the elements.

15         One.  The Defendant devised or knowingly participated

16  in a scheme or plan to deprive the citizens of the City and

17  County of Honolulu and the City and County's Department of

18  Planning and Permitting, also known as DPP, of their right of

19  honest services.

20         Two.  The scheme or plan consisted of one or more

21  bribes in exchange for the Defendant's services.  The exchange

22  may be expressed or may be implied from all the surrounding

23  circumstances.

24         Three.  The Defendant owed a fiduciary duty to the

25  citizens of the City and County of Honolulu and to the DPP.

1              Four.  The Defendant acted with the intent to defraud

2    by depriving the citizens of the City and County of Honolulu and

3    the DPP of their right of honest services.

4              Five.  The Defendant's act was material.  That is, it

5    had a natural tendency to influence or was capable of influencing

6    an entity's acts.

7              And six.  The Defendant used or caused someone to use

8    interstate wires to carry out or to attempt to carry out the

9    scheme or plan.

10             As to Count 7, false statement in violation of 18

11   U.S.C. 1001, the following of the elements.

12             One.  The Defendant made a false statement.

13             Two.  The statement was made in a matter within the

14   jurisdiction of the United States Department of Justice.

15             Three.  The Defendant acted willfully.  That is, the

16   Defendant acted deliberately and with knowledge both that the

17   statement was untrue and that his conduct was unlawful.

18             And four.  The statement was material to the activities

19   or decisions of the United States Department of Justice.  That

20   is, it had a natural tendency to influence or was capable of

21   influencing the Department's decisions or activities.

22             THE COURT:  All right.  Thank you, Mr. Nolan.  Mr.

23   Otake, do you agree those are the material elements?

24             MR. OTAKE:  Yes.

25             THE COURT:  All right.  Did you hear all those, Mr.

1   Inouye?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Did you understand them all?

4            THE DEFENDANT:  Yeah.

5            THE COURT:  They sounded familiar to you, right?

6            THE DEFENDANT:  Yes.

7            THE COURT:  You understand that the Government is

8   required to essentially prove all of those elements in order to

9   hold you responsible for any one of these crimes.  Do you

10  understand that?

11           THE DEFENDANT:  Yes.

12           THE COURT:  And that they have to prove it beyond a

13  reasonable doubt?  We'll talk a little bit about some of your

14  trial rights, but you understand that basic concept?

15           THE DEFENDANT:  Yes.

16           THE COURT:  All right.  And if they don't do that, then

17  you can't be held accountable.  Do you understand?

18           THE DEFENDANT:  Yes.

19           THE COURT:  Okay.  Now in terms of factual basis,

20  beyond you knowing what those elements are, it's important that

21  the Court be satisfied that there's an adequate basis in fact to

22  support each element of the offenses charge.

23           So I'm going to ask Mr. Nolan to summarize the

24  essential facts that the Government would prove that trial.  I'm

25  also going to, after that, ask if you've heard those, and then

1    immediately thereafter, we'll ask you what it is that you did in

2    this particular case that makes you think you're guilty of these

3    offenses.  Okay.  So you understand?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Okay.  All right.  Mr. Nolan.

6              MR. NOLAN:  Yes, Your Honor.  If this matter were to

7    proceed to trial, the Government would prove the following facts

8    through the introduction of witness testimony, bank and other

9    business records, statements by the Defendant, and other

10   evidence.

11             From approximately 2012 through October 2017, the

12   Defendant was employed by the Department of Planning and

13   Permitting, also known as DPP, of the City and County of

14   Honolulu, Hawaii, as a building plans examiner and supervisor.

15   During the employment, the Defendant engaged in a scheme to

16   secretly use his official position to enrich himself by taking

17   bribes in exchange for official actions.  As an employee of DPP,

18   the Defendant owed a fiduciary duty to DPP and to the citizens of

19   the City and County of Honolulu.

20             In implementing the scheme, the Defendant acted with

21   the intent to defraud by depriving DPP and the citizens of the

22   City and County of Honolulu of their right to honest services

23   from the Defendant.

24             From in or about September 2016 to in or about

25   September 2017, in furtherance of the scheme, the Defendant

1    solicited and accepted gifts, payments, and other things of value

2    totaling at least $89,205.81 from an architect and third party

3    reviewer here.   Hereinafter Architect 1.   The Defendant provided

4    favorable official action on behalf of Architect 1, as requested,

5    and as opportunities arose, including expediting approval of

6    projects submitted for approval to DPP by Architect 1 ahead of

7    projects previously submitted by others.

8             From in or about February 2012 to in or about August

9    2017, in furtherance of the scheme, the Defendant solicited and

10   accepted gifts, payments and other things of value totaling at

11   least $3,425 from a signage contractor hereinafter Entity 1.  The

12   Defendant provided favorable official action on behalf of Entity

13   1, as requested, and as opportunities arose, including expediting

14   approval projects submitted for approval to DPP by Entity 1 ahead

15   of projects previously submitted by others.

16            From in or about April 2012 to in or about January

17   2016, in furtherance of the scheme, the Defendant solicited and

18   accepted gifts, payments and other things of value totaling at

19   least $9,685 from a building contractor hereinafter Entity 2.

20   The Defendant provided favorable official action on behalf of

21   Entity 2, as requested, and as opportunities arose, including

22   expediting approval of projects submitted for approval to DPP by

23   Entity 2 ahead of projects previously submitted by others.

24            From in or about February 2012 to in or about December

25   2012, in furtherance -- excuse me, Your Honor.  Your Honor, I'm

1   going to make a correction to paragraph five, which I was just

2   reading.

3           THE COURT:  Sure.

4           MR. NOLAN:  It's paragraph five of my letter to the

5   Court, copied the Defense counsel of October 13, 2022, and I will

6   restart paragraph five.

7           From in or about February 2012 to in or about December

8   of 2016, in furtherance of the scheme, the Defendant solicited

9   and accepted gifts, payments and other things of value totaling

10  at least $1,825 from a signage contractor hereinafter Entity 3.

11  The Defendant provided favorable official action on behalf of

12  Entity 3, as requested, and as opportunities arose, including

13  expediting approval of projects submitted for approval to DPP by

14  Entity 3 ahead of projects previously submitted by others.

15          In furtherance of the scheme the Defendant took steps

16  to hide and conceal the scheme from DPP and the citizens of the

17  City and County of Honolulu, and to cover-up his activity and the

18  nature and scope of his dealings with persons who paid him

19  bribes, including by using a sole proprietorship name, Ski or S-

20  K-I and Associates, a personal cell phone and in person meetings

21  at places other than DB -- excuse me, DPP to carry out the scheme

22  and by his failure to inform DPP of the bribes received by him in

23  exchange for expediting approval of projects submitted by persons

24  who paid him bribes.

25          On or about September 12, 2016, for the purpose of

1   executing the scheme and artifice to defraud, the Defendant

2   caused to be transmitted in interstate commerce a wire

3   communication by his bank for the clearing and payment of a check

4   from Architect 1 to the Defendant for $12,583.08, which the

5   Defendant had deposited into his bank account.

6          Additionally, the Defendant caused the wires identified

7   on page 5 of the indictments with regard to counts 2 through 6,

8   on the approximate dates stated in the indictment and in the

9   approximate amounts stated in the indictments.

10          On or about July 11, 2019, in Honolulu, Hawai'i, the

11   Defendant willfully and knowingly made a materially false,

12   fictitious and fraudulent statement and representation in a

13   matter within the jurisdiction of the Executive Branch of the

14   Government of the United States by stating during a proffer to a

15   special agent of the Federal Bureau of Investigation and an

16   Assistant United States Attorney of the District of Hawai'i, that

17   Architect 1 loaned the Defendant approximately $100,000 while the

18   Defendant was employed at DPP.

19          The statement and representation were false because, as

20   the Defendant then and there knew, the money provided by

21   Architect 1 to the Defendant, while employed at DPP constituted

22   bribes in exchange for favorable official action in connection

23   with the scheme and artifice charged in Counts 1 through 3 of the

24   indictment.  At the time the Defendant made the statement and

25   representation, the Defendant knew that making such statement was

1   unlawful.

2          THE COURT:  All right.  Mr. Otake, with regard to the

3   factual basis to include the, I guess, corrections -- correction

4   made by Mr. Nolan and then the additional information referencing

5   the indictment, the specific dates and amounts so those bank --

6   transfer -- or bank account, I guess, transactions, do you agree

7   that these are the facts that the Government would otherwise

8   prove?

9          MR. OTAKE:  Your Honor, let me put it to you this way.

10  I agree that the Government believes that's what the evidence at

11  trial would show.  Mr. Inouye is prepared today to plead guilty,

12  and he has a factual statement that he's prepared to read to the

13  Court to tell you in his own words why he believes he's guilty.

14         THE COURT:  All right.  But just to get to it, as far

15  as what the Government's recited, you agree?

16         MR. OTAKE:  I agree that --

17         THE COURT:  That's what they --

18         MR. OTAKE:  -- the Government believes that's what they

19  would show a trial, and that would be a sufficient factual basis

20  for guilt.

21         THE COURT:  Okay.  All right.  Thank you very much.

22         Okay.  Mr. Inouye, did you hear what the Government

23  just recited?  A whole lot of facts, right?

24         THE DEFENDANT:  Yeah.

25         THE COURT:  And, basically, the vast majority of that

1  came from the memo that was transmitted by the Government to the

2  Court, but also copied to your attorney.  Do you understand that?

3  Okay.  You had a chance to go over that with that with your

4  attorney?

5         THE DEFENDANT:  Yeah.

6         THE COURT:  Okay.  And so did you understand everything

7  that the Government just recited?

8         THE DEFENDANT:  Yes.

9         THE COURT:  Okay.  Now as far as hearing from you,

10  beyond hearing from the Government, what they believe the facts

11  would show by pleading guilty, you understand you're giving up

12  your right to remain silent?  You understand that?

13         THE DEFENDANT:  Yeah.

14         THE COURT:  Okay.  And so by giving up that right, I'm

15  going to ask you essentially what it is you think you did that

16  makes you guilty of these offenses, and you have to respond

17  truthfully, because you've now been sworn under oath.  Do you

18  understand that?

19         Okay.  Alright.  And so with that, Mr. Inouye, what is

20  it that you think you did in this case that makes you think

21  you're guilty of each of the seven offenses that you intend to

22  plead to?  You can proceed.

23         THE DEFENDANT:  I can remain seated.

24         From 2012 to 2017, I was an employee with the City and

25  County of Honolulu, Department of Planning and Permitting.  An

1  architect I knew offered to compensate me to prescreen plans he

2  was going to submit to DPP to make sure they were code compliant

3  and to help expedite approval of the projects.  He would ask me

4  to review certain plans before they were submitted.  I would make

5  sure they were code compliant.  These plans were then sometimes

6  approved by DPP ahead of projects previously submitted by others.

7  These plans would have been approved anyway because I made sure

8  they were code compliant, but their approval was expedited.

9          This architect would deposit money to compensate me for

10  this into a personal account.  I also, from time to time, would

11  be compensated by signage contractors and the general contractor

12  to assist them with properly inputting their application into

13  DPP's electronic submittal system.  I found a company to do this

14  work and the signage contractors and general contractor would

15  compensate me when I would do these things for them.

16          By doing these things and accepting compensation for

17  it, I deprived the citizens of the City and County of Honolulu

18  and the Department of Planning and Permitting of their right of

19  honest services.  Additionally, in furtherance of this plan, the

20  six wire communications listed on page five of the indictment all

21  occurred.

22          Lastly, during an interview with the FBI and the U.S.

23  Attorney in July of 2019, I made materially misleading -- I made

24  a maturely misleading statement that compensation given to me by

25  the architect in question was given to me as a loan.  I knew that

1  it was unlawful to make a false statement to the FBI.

2          THE COURT:  Alright.  Is that everything, Mr. Inouye?

3          THE DEFENDANT:  Yeah.

4          THE COURT:  Okay.  Now, Mr. Inouye, at the time -- and

5  thank you for your statement, but, basically, you knew at the

6  time that you were doing this that it was wrong, right?  Do you

7  understand what I'm saying?

8          MR. OTAKE:  One second.

9          THE DEFENDANT:  Yes.

10          THE COURT:  All right.  In other words, but for your

11  involvement, whether you call it prescreening, making sure

12  they're code compliant, basically, people's submissions were

13  getting pushed to the front of the line due to your involvement,

14  correct?

15          THE DEFENDANT:  Yes.

16          THE COURT:  And you were getting compensated for that,

17  correct?  Right?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And while all the other individuals that

20  were just waiting in line, right, that wasn't fair for them,

21  correct?

22          THE DEFENDANT:  Correct.

23          THE COURT:  All right.  And you knew this at the time

24  that you were engaged in this over these years, right?

25          THE DEFENDANT:  Yeah.

1           THE COURT:  Okay.  And to the extent that you were

2  interviewed by the FBI with U.S. Attorney, basically you made

3  statements that -- or a statement, I think was what you described

4  it as, that you knew that was -- what was your term, materially -

5  - it was a misrepresentation.  Was that what you said?

6           THE DEFENDANT:  He said materially misleading.

7           THE COURT:  Misleading.

8           THE DEFENDANT:  Yeah.

9           THE COURT:  Okay.  All right.  What was that statement?

10          MR. OTAKE:  You can read it again.

11          THE DEFENDANT:  Oh.

12          MR. OTAKE:  Yeah.  At the end.

13          THE DEFENDANT:  Okay.  I made a materially misleading

14  statement that compensation given to me by the architect -- given

15  to me by the architect in question was given to me as a loan.  I

16  knew that it was unlawful to make a false statement.

17          THE COURT:  Right.  You said it was a loan, but it

18  wasn't a loan, right?  Correct?

19          THE DEFENDANT:  Yeah.

20          THE COURT:  Okay.  And that was false?

21          THE DEFENDANT:  Yeah.

22          THE COURT:  Okay.  All right.  With that, Mr. Nolan, is

23  there anything in addition that you would like the Court to make

24  inquiry of Mr. Inouye about -- concerning his factual basis to

25  protect the plea?

1          MR. NOLAN:  Yes, Your Honor.  Just a few things.  Let

2   me start with I didn't hear the Defendant acknowledge explicitly

3   that the contractors identified in the indictment were those that

4   he took bribes from.  Do you want me to just do these one by one?

5          THE COURT:  All right.

6          MR. OTAKE:  Well, I mean, however you guys want to do

7   it.  I mean, I think he was admitting that --

8          THE COURT:  Yeah.

9          MR. OTAKE:  -- the wires were accurate.

10         THE COURT:  Correct.

11         MR. OTAKE:  So I mean, maybe it's just a matter of --

12         THE COURT:  Correct.

13         MR. OTAKE:  -- clarifying.

14         THE COURT:  All right.

15         MR. OTAKE:  We're not disputing that it's the --

16         THE COURT:  The named entities.

17         MR. OTAKE:  -- the contract -- the named ones -- the

18  names in the indictment.  So however you want to do it.

19         THE COURT:  Okay.  So, Mr. Inouye, you understand what

20  Ms. Noel was asking about?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Okay.  So just generally speaking, you knew

23  -- you know the architects, the signage companies, et cetera,

24  that are named in the indictment, correct?  Or referenced

25  therein, correct?

1           THE DEFENDANT:  Yes.

2           THE COURT:  You know who they are?

3           THE DEFENDANT:  Yeah.

4           THE COURT:  By your statement here today, you are

5  acknowledging and agreeing that those were the entities that were

6  involved in this interaction between you and them as far as

7  review, payment, et cetera, correct?  In other words, there's not

8  some other company that you're referring to?

9           THE DEFENDANT:  Yes.

10          THE COURT:  All right.  Mr. Nolan, I think that's

11 suffices, but I'm not sure if there's anything else.

12          MR. NOLAN:  On that point?

13          THE COURT:  Yes.

14          MR. NOLAN:  Yes.  The next thing I did not hear, and it

15 could be me, the Defendant, Mr. Inouye, explicitly say that he

16 knew at the time that -- well, that he owed at the time a

17 fiduciary duty to the City and County citizens and DPP.

18          THE COURT:  All right.  Do you agree with that, Mr.

19 Inouye?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Your job, in other words, was to do your

22 job and do it properly, correct?

23          THE DEFENDANT:  Yes.

24          THE COURT:  All right.  So you had a duty to make sure

25 that you treated everybody fairly.  That's basically what comes

 1   down to.  You knew that, right?

 2            THE DEFENDANT:  Yeah.

 3            THE COURT:  And that by doing what you did, it's been

 4   described both in the factual statement by the Government as well

 5   as what you've said, you were allowing some people or some

 6   entities be treated much more favorably than others, correct?

 7            THE DEFENDANT:  Yes.

 8            THE COURT:  All right.  And that is not what you're

 9   supposed to do, correct?

10            THE DEFENDANT:  Correct.

11            THE COURT:  All right.  Mr. Nolan, anything else?

12            MR. NOLAN:  I think we're good, Your Honor.  Your

13   Honor, thank you.

14            THE COURT:  All right.  Mr. Otake, is there anything

15   else that you would like to state with regard to factual basis?

16   Otherwise the Court is satisfied.

17            MR. OTAKE:  I appreciate it.  The one thing I just

18   would like to state for the record is just that I was not

19   representing him at the time of the false statement in Count 7.

20   That was another attorney.  I mean, just to make sure that the

21   Court and nobody else thinks there might be a conflict here.

22            THE COURT:  No, no.  Understood.  Okay.  All right.  So

23   thank you, Mr. Inouye.

24            Now just give me a second.  All right.  Now with that,

25   Mr. Inouye, now you know that you're pleading without a plea

1  agreement, correct?

2           THE DEFENDANT:  Correct.

3           THE COURT:  All right.  And what that basically means

4  is the Government's not making any promises at all about what

5  they're going to do or ask for in this particular case.  You

6  understand that?

7           THE DEFENDANT:  Yes.

8           THE COURT:  All right.  And so they're free to ask for

9  what they think is appropriate and permitted by law at

10 sentencing.  And you also, and Mr. Otake on your behalf, can ask

11 for whatever you folks feel is fair and appropriate by law.  You

12 understand that?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Okay.  And the Government -- excuse me, the

15 Court, in other words, Judge Kobayashi, will decide what that

16 sentence is.  You understand?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And you have no way of knowing as you sit

19 here today what that ultimate outcome or sentence is going to be.

20 You know that, right?

21          THE DEFENDANT:  Yes.

22          THE COURT:  So by pleading without a plea agreement,

23 okay, you are taking your chances as far as what's going to

24 happen in this case, you know that, right?

25          THE DEFENDANT:  Yeah.

1          THE COURT:  Okay.  And so you might have certain

2   expectations that Mr. Otake may have talked to you about, but

3   just to be clear, if what ultimately happens in this case is

4   different than what you would like to see happen or the sense

5   that you hope for, that's not going to be a basis to set aside

6   this plea.  Do you understand?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Okay.  Now you discussed pleading without a

9   plea agreement at length with your attorney, right?

10         THE DEFENDANT:  Yes.

11         THE COURT:  You've thought long and hard about doing

12  this, correct?

13         THE DEFENDANT:  Yes.

14         THE COURT:  You're sure you're sufficiently advised and

15  considered all your options in this case, Mr. Inouye?

16         THE DEFENDANT:  Yes.

17         THE COURT:  All right.  And whose choice is it to plead

18  without a plea agreement here today?

19         THE DEFENDANT:  Mine.

20         THE COURT:  All right.  Anyone making any promises in

21  exchange for your plea today?

22         THE DEFENDANT:  What was that?

23         THE COURT:  Anyone making you any promises, Mr. Inouye,

24  to --

25         THE DEFENDANT:  Oh, no.

1          THE COURT:  -- get you to plead today?

2          THE DEFENDANT:  No.

3          THE COURT:  All right.  Anyone putting any pressure on

4     you at all to make you plead when you don't want to?

5          THE DEFENDANT:  No.

6          THE COURT:  All right.  Is anyone trying to force or

7     threaten you in any way whatsoever to enter this plea?

8          THE DEFENDANT:  No.

9          THE COURT:  Okay.  All right.  Mr. Inouye, you

10    understand the elements of each of the offenses, correct?

11         THE DEFENDANT:  Yes.

12         THE COURT:  You understand all the facts that the

13    Government would prove, right?

14         THE DEFENDANT:  Yes.

15         THE COURT:  You understand all the maximum penalties

16    and other consequences you could suffer, correct?

17         THE DEFENDANT:  Yes.

18         THE COURT:  All right.  Now as far as your rights at

19    trial, you understand that by pleading here today, you're giving

20    up the right to be presumed innocent?  You understand that?

21         THE DEFENDANT:  Yes.

22         THE COURT:  All right.  You have every right to

23    maintain your innocence and go to trial and make the Government

24    do its job and prove you're guilty.  You understand that?

25         THE DEFENDANT:  Yeah.

1            THE COURT:  All right.  So by going this route and

2    pleading guilty, you're giving up your right to go to trial

3    before either a judge or a jury.  You understand that?

4            THE DEFENDANT:  Yeah.

5            THE COURT:  And you're going to give up your right here

6    today to have an attorney represent -- excuse me.  You're going

7    to be giving up your right to require the Government to prove

8    your guilt beyond a reasonable doubt as to each and every element

9    of the offenses charged?  Do you understand?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Now at trial Mr. Otake has explained to you

12   what that looks like, right?

13           THE DEFENDANT:  Uh-huh.  Yes.

14           THE COURT:  Okay.  And so the Government's required to

15   put on evidence and proof.  They put on their evidence through

16   witnesses, documents, other information.  You get to see and

17   question all of that.  You also get to call your own witnesses if

18   you want and subpoena them to come to Court, even if they don't

19   want to show up.  You have the right to testify on your own

20   behalf if you choose to at trial.  Do you understand all of that?

21           THE DEFENDANT:  Yeah.

22           THE COURT:  And you understand that if you choose to

23   testify, that's just an option that you have.  You're not

24   required to because you have no burden of proof at trial.  You

25   understand that?

1              THE DEFENDANT:  Yes.

2              THE COURT:  Okay.  And just because you're the

3    Defendant doesn't mean that the jury is permitted to look at your

4    testimony different than anybody else that testifies in the case,

5    do you understand?

6              THE DEFENDANT:  Yeah.

7              THE COURT:  They don't get say, Mr. Inouye, he's the

8    Defendant, so we got to scrutinize his testimony way different,

9    and we cannot give him the same benefits as far as credibility is

10   concerned, you understand?

11             THE DEFENDANT:  Yeah.

12             THE COURT:  They're going to judge you just like any

13   other witness, you understand?

14             Now you don't have to testify, but that's your right.

15   And you have the right also to remain silent.  You know that,

16   right?

17             THE DEFENDANT:  Yeah.

18             THE COURT:  And if you choose to remain silent, there's

19   nothing about that that the judge or the jury can use against you

20   and deciding your guilt or innocence in this case, you

21   understand?

22             THE DEFENDANT:  Yes.

23             THE COURT:  In other words, they can't say, hey, Mr.

24   Inouye didn't testify, he must be hiding something.  So, you

25   know, let's hold that against him.  They can't do that, you

1  understand?

2          THE DEFENDANT:  yes.

3          THE COURT:  You clear about that?

4          THE DEFENDANT:  Yeah.

5          THE COURT:  You understand that the Government has to

6  prove your guilt beyond a reasonable doubt, and it has to be a

7  unanimous verdict?  You understand?

8          THE DEFENDANT:  Yeah.

9          THE COURT:  And what's a unanimous verdict?  It's 12

10 jurors.

11          THE DEFENDANT:  All 12 would have to be in agreement.

12          THE COURT:  Okay.  Of the 12 jurors all 12 got to

13 agree, right?

14          THE DEFENDANT:  Correct.

15          THE COURT:  Right.  So even if just one disagrees, then

16 the Government hasn't done its job, and you can't be held

17 responsible, you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  All right.  Now, if you go to trial and you

20 are convicted, let's say, you still have a right to appeal from

21 that conviction, you understand?

22          THE DEFENDANT:  Yeah.

23          THE COURT:  And you can appeal to a higher court, the

24 Ninth Circuit or a higher court, even the Supreme Court, if you

25 wanted to, but the appeal would be geared towards any mistakes

1  that you think might have been made in the case.  You understand

2  that?

3        THE DEFENDANT:  Yeah.

4        THE COURT:  Whether it's by any of the judges that

5  touched your case, whether it's by the jury, anything at all like

6  that.  You understand?

7        THE DEFENDANT:  Yeah.

8        THE COURT:  And just like at trial, you would be

9  entitled to have an attorney assist you at trial.  And if you

10  couldn't afford an attorney, then the Court would provide you

11  with attorney at no cost to you on appeal.  Do you understand

12  that?

13        THE DEFENDANT:  Yeah.

14        THE COURT:  Okay.  Do you understand all of these

15  rights, Mr. Inouye?

16        THE DEFENDANT:  Yes.

17        THE COURT:  Do you understand that by pleading guilty

18  that you're going to give up all those rights, there's not going

19  to be a trial at all.  Ultimately, Judge Kobayashi will decide.

20  If she decides to accept your plea, then you're going to be found

21  guilty, and you're going to be sentenced.  All of that without a

22  trial.  Do you understand?

23        THE DEFENDANT:  Yeah.

24        THE COURT:  Okay.  You understand that you're also

25  giving up your right to appeal any sentence that may be imposed

1   in this case, and you're waving your right to collaterally attack

2   that sentence?  You understand that?

3             MR. OTAKE:  I'm sorry, Your Honor.  That's actually one

4   of the reasons we're --

5             THE COURT:  Oh, I'm sorry.

6             MR. OTAKE:  -- not going with a plea agreement.

7             THE COURT:  My apologies.  It's just one of the

8   portions in my notes.

9             MR. OTAKE:  Yeah.

10             THE COURT:  Okay.  All right.  My apologies there, Mr.

11   Inouye.  Okay.  But you understand all your rights as far as your

12   trial rights, Mr. Inouye?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Okay.  Any questions about that?

15             THE DEFENDANT:  No.

16             THE COURT:  All right.  Now with regards to -- I'm

17   sorry.  Let's double check here.  Oh, one of the last things I

18   need to cover with you, Mr. Inouye.  You understand that federal

19   law sets for certain guidelines that specify the sentences for

20   individuals convicted of federal crimes?  You understand that?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Mr. Otake has advised you about all that,

23   correct?

24             THE DEFENDANT:  Yes.

25             THE COURT:  All right.  And the Court is required to

1    consider those guidelines, but those guidelines are advisory

2    only.  In other words, they don't dictate exactly what your

3    sentence is going to be, you understand?

4              THE DEFENDANT:  Yeah.

5              THE COURT:  The Court has to consider them, right, and

6    has to consider other factors that may apply in your case, but

7    ultimately, it's up to the judge to decide what sentence is most

8    appropriate.  You understand?

9              THE DEFENDANT:  Yeah.

10             THE COURT:  You discussed with Mr. Otake how the

11   guidelines and other sentencing factors might apply in your case?

12             THE DEFENDANT:  Yes.

13             THE COURT:  You understand that as of this point in

14   time, no presentence report has been done, so it's impossible to

15   determine what your guidelines would be without the benefit of

16   that report?  You understand?

17             THE DEFENDANT:  Yeah.

18             THE COURT:  Okay.  Now after the report is generated,

19   you and your attorney will have a chance to review it, as will

20   the Government, and then if you have any objections or anything

21   like that, then you're perfectly free to lodge those objections

22   with the Court.  You understand?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Okay.  Now you understand that regardless

25   of what the guidelines say, it's ultimately up to the judge to

1    decide what the sentence is, and that sentence could be more

2    severe or different than what the guidelines call for.  You

3    understand?

4              THE DEFENDANT:  Yes.

5              THE COURT:  And you understand, if your sentence is

6    more severe or different than what you expect, that you cannot

7    change your mind and ask that you plea be set aside just for

8    that?  You understand?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Okay.  Does that make sense to you?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Okay.  And you also understand that from

13   time to time -- I'm not going to say that this happens, this will

14   happen in your case, but sometimes the Government and you,

15   through your attorney, might agree to some sort of sentencing

16   recommendation after the presentence report comes out.  Whatever

17   the recommendation might be jointly from you folks, it's

18   something that the Court will have to consider, but it's entirely

19   up to the judge to decide whether or not to adopt that or not.

20   You understand?

21             THE DEFENDANT:  Yeah.

22             THE COURT:  In other words, you got no assurance at all

23   what the sentence is going to be.  Do you understand?

24             THE DEFENDANT:  Yeah.

25             THE COURT:  Are you okay with taking that chance?

1          THE DEFENDANT:  Yes.

2          THE COURT:  In other words, that chance includes that

3    you could get the maximum sentence imposed by law.  You

4    understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  All right.  Anyone make any promises to you

7    about what your sentence ultimately will be in this case, Mr.

8    Inouye?

9          THE DEFENDANT:  No.

10         THE COURT:  Okay.  Knowing that you still want to

11   proceed and enter guilty pleas in this case, knowing everything

12   you know?

13         THE DEFENDANT:  Yes.

14         THE COURT:  All right.  Is there anything at all that I

15   covered with you that you don't understand, or you'd like an

16   opportunity to talk to your attorney about before I ask for your

17   pleas?

18         THE DEFENDANT:  No.

19         THE COURT:  Okay.  All right.  With that as to each of

20   Counts 1 through 6, conspiracy to commit honest services fraud,

21   as well as Count 7 false statement, how do you plead, Mr. Inouye?

22         THE DEFENDANT:  Guilty.

23         THE COURT:  Okay.  Are you pleading guilty because you

24   in fact believe you are guilty of each of these offenses?

25         THE DEFENDANT:  Yes.

1          THE COURT:  Alright.  Mr. Nolan, is there anything else

2    the Court -- or the Government believes the Court should do to

3    further protect the plea?

4          MR. NOLAN:  Your Honor, I just want to clarify one

5    thing.  I think I heard you say conspiracy.

6          THE COURT:  Oh.

7          MR. OTAKE:  At the very beginning, you did say that and

8    maybe later.  But just to be clear, Mr. Inouye understands that

9    it's not a conspiracy charge.  It's 1 through 6 is just honest

10   services wire fraud.

11         THE COURT:  I did say that. And so I stand corrected.

12   Okay.  So to the offenses that I've asked you to what your plea

13   is, just to be clear, it's honest services fraud in Counts 1

14   through 6 and false statement in Count 7.  Do you understand

15   that --

16         THE DEFENDANT:  Yeah.

17         THE COURT:  -- Mr. Inouye, right?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Okay.  And to each of those offenses, your

20   plea is?

21         THE DEFENDANT:  Guilty.

22         THE COURT:  Okay.  Thank you.

23         All right.  With that, the Court will find that the

24   Defendant is fully competent and capable of entering an informed

25   plea, that his pleas of guilt are voluntary, and knowingly, and

1    intelligently made.  The pleas are supported by an adequate basis

2    in fact for each of the essential elements of each of the

3    offenses to which he's pled.  The Court will prepare and sign off

4    on a report and recommendation regarding the guilty plea.

5              And with that, is there anything else, Mr. Nolan?

6              MR. NOLAN:  No, Your Honor.  Thank you.

7              THE COURT:  Okay.  Mr. Otake?

8              MR. OTAKE:  No, Your Honor.  Thank you.  And thank you

9    for allowing us to sit through this.

10             THE COURT:  No, not a problem.

11             Mr. Inouye, you got any questions for me?  You don't

12   have to, I'm just asking.

13             THE DEFENDANT:  No.

14             THE COURT:  Okay.  All right.  With that, sentencing

15   date, please, before the District Judge?

16             THE CLERK:  Yes, Your Honor.  Sentencing shall be on

17   Thursday, March 9, 2023, at 130 p.m., before District Judge

18   Kobayashi in Aha Nonoi.

19             THE COURT:  All right.  And there'll be a preparation

20   of a presentence report.  Mr. Otake, will go through all of that

21   with you.  It's a real important part of the process.  Make sure

22   you fully cooperate with that.  You have every incentive to want

23   to make sure that report is as complete as it can be.

24             And with that, Court will, I guess, confirm Mr. Inouye

25   remain on release pending sentencing in this case, Mr. Nolan?

1          MR. NOLAN:  Yes, Your Honor.

2          THE COURT:  Okay.  Anything else?

3          MR. OTAKE:  No. Thank you, Your Honor.

4          MR. NOLAN:  Thank you.

5          THE COURT:  Thank you, folks.  All right.  Good luck to

6  you, Mr. Inouye.

7          THE CLERK:  All rise.  This Honorable Court stands in

8  recess.

9      (Proceedings concluded at 11:42 a.m.)

CERTIFICATE

I, Jessica B. Cahill, Court approved transcriber, do hereby certify that pursuant to 28 U.S.C. §753, the foregoing is a complete, true, and correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated: November 25, 2022

Jessica B. Cahill, CER/CET-708